[Cite as *State v. K.W.*, 2024-Ohio-1778.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                          No. 113160

    v. :

K.W., :

    Defendant-Appellant. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 9, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-630145-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory J. Ochocki, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Erika Cunliffe, Assistant Public Defender, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant K.W. appeals from the trial court's denial of her motion for expungement. For the reasons that follow, we reverse and remand.

**Factual and Procedural History**

{¶ 2} This appeal stems from a September 2017 incident in which K.W. was attending a memorial for a deceased family member who had been murdered. There was friction within the family, and this came to a head in the form of an altercation between K.W. and her cousin F.S. Because the case was resolved by a plea agreement, the facts of the case were not fully set forth below, and we are limited to partial conflicting accounts of the incident gleaned from the record. K.W. and several other individuals were near F.S.'s car, and F.S. approached and asked that they remove several items from F.S.'s car. F.S. told law enforcement that he swiped a cup of hot coffee off his car. K.W. contended that F.S. threw the cup of hot coffee at her. K.W. subsequently threw a glass bottle at F.S., striking him in the temple and causing him to get stitches. F.S. claimed that K.W. had been drinking; K.W. denied this allegation.

{¶ 3} As a result of this altercation, a Cuyahoga County Grand Jury indicted K.W. on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony; and one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. On January 10, 2019, the case was resolved by a negotiated plea deal, pursuant to which K.W. pleaded guilty to one amended count of misdemeanor assault in violation of R.C. 2903.13. The remaining charges were dismissed.

{¶ 4} The trial court sentenced K.W. to six months in jail, suspended that sentence, and placed K.W. on one year of community-control sanctions. As part of K.W.'s community control, she completed a Treatment Alternatives to Street Crime ("TASC") assessment, an anger management program, and submitted to random drug testing. K.W. was also ordered to have no contact with the victim. K.W. apologized to all for her actions that day. The victim did not appear at the sentencing hearing.

{¶ 5} K.W. successfully completed her sentence, and her community control was terminated on January 10, 2020.

{¶ 6} On March 10, 2023, K.W. filed an application to have her criminal record sealed pursuant to R.C. 2953.32(A)(1). K.W. requested a hearing on this application.

{¶ 7} On March 20, 2023, the court ordered an expungement investigation report ("EIR").

{¶ 8} On June 13, 2023, the state filed a brief in opposition to K.W.'s application to seal her criminal record. The state's brief in opposition argued that the EIR indicated that K.W. was on active probation with the Cleveland Municipal Court for a driving offense until September 20, 2023, and therefore K.W. was not eligible to have her criminal record sealed. On June 16, 2023, the court ordered K.W. to respond to the state's brief in opposition.

{¶ 9} On August 16, 2023, K.W. filed a reply to the state's brief in opposition, stating that her probation in Cleveland Municipal Court had been

terminated early.  K.W. further explained that her conviction resulted in the loss of her State Tested Nursing Assistant ("STNA") license, and sealing her record related to this case would allow her to renew her STNA license and return to work in that capacity.

{¶ 10} On September 7, 2023, the court held a hearing on K.W.'s motion to seal her criminal record.  At the hearing, the state indicated to the court that its initial concern regarding K.W.'s eligibility under the statute was resolved because K.W.'s probation for the 2022 traffic offense had been terminated in February 2023. The state went on, however, to note that the relevant statute was amended in April to give victims the right to be advised of expungement hearings and to be allowed to voice any opposition they may have to the requested relief.  The state informed the court that it had notified the victim in this matter, F.S., and F.S. was opposed to K.W.'s motion to seal.

{¶ 11}  F.S. addressed the court, stating:

At this point in my life, Your Honor, I try not to live with regrets, but one of the biggest regrets that I have right now is contact with the prosecutor and telling the prosecutor that I wanted the charges amended to begin with so she could continue to care for my aunt.  Her mother and my grandmother are sisters.

So, it's a regret of mine's [sic].  Even after doing that, you would think that she would be appreciative, that she, like, you know, okay, cool, thank you.  But it's been the exact opposite.  There's been even more hostility.  There was never any acknowledgement of what she did.

I got a scar on my face, like, two inches on my temple.  So a half an inch down she could have blinded me in my left eye.  A little bit more pressure, she could have killed me.

She never, ever apologized, never showed any remorse of what she did. Resorted to Internet bullying. And she put all of this stuff on the Internet, and you know, people, like, oh, what about this? And what about this? I got to deal with that on a constant basis.

It's like every time I go around my family, it's her and her negativity. So, I wish that I had moved forward when it was felonious assault and domestic violence because there has been no lesson learned.

So that's why for me when it was, like, trying to get your record expunged, like, really? You are not going to acknowledge what you did to me, but then try to wipe it off the records where you don't have to deal with this? No, I just don't think that's fair. I don't think that's fair.

I've been ostracized because of what she did to me. And just — she's just a mean person, just a mean person.

So, I don't find she deserves to get her record expunged. I think that she should have to deal with that just like I have to look in the mirror and see the scar on my face every day for the rest of my life.

{¶ 12} K.W. also addressed the court, stating:

I just want to say that I want to put this behind me. I want to put this completely behind me.

I apologized. He did not come to court that day. He sent his grandmother. And I thought if he wanted to address me, he would have addressed me on my sentencing day.

Again, I was offered a plea agreement. I went through all necessary counseling and everything.

And this is almost six years to the day. I was very apologetic to the Court, to you, and everybody involved at the time.

He did not show up to court, so the attitude that he has now he did not have on that day. This is six years later. I'm pretty sure he wants to get this done, too.

That's all, Your Honor.

{¶ 13} The court then stated that it had considered this information and identified a few "concerns" it had with respect to sealing K.W.'s record:

I'll note that there was alcohol involved in that case in 2017 that is before the Court, and then just recently this defendant has been convicted of an alcohol-related driving offense and placed on probation.[1]

The wishes of the victim in this matter indicates [sic] that there is ongoing, continuing disagreements, and that I think therefore, the State's interests in maintaining these records outweighs the defendant's — this applicant's rights to have it sealed based on ongoing bad feelings.

If God forbid something happens in the future, these are important records to be maintained and available for the State's use. So therefore, I'm going to deny the application.

{¶ 14} The court's denial of K.W.'s motion to seal was journalized, and K.W. filed a timely notice of appeal the same day, on September 7, 2023. K.W. presents a single assignment of error for our review:

The trial court abused its discretion when it denied K.W.'s motion for expungement because that decision did not properly weigh the competing interests involved and is not supported by the record.

**Law and Analysis**

{¶ 15} K.W.'s sole assignment of error argues that the trial court abused its discretion when it denied her motion for expungement because the court did not properly weigh the competing interests involved and the court's decision is not supported by the record.

---

[1] We note that while the police report from the 2017 incident contained statements from F.S. that K.W. had been drinking, and F.S. stated at the 2023 hearing that K.W. was drunk during the incident, these are the only references to alcohol being involved in this case. Neither the offenses with which K.W. was initially charged, nor the offense to which she ultimately pleaded guilty, included any reference to alcohol, nor does any other part of the record.

{¶ 16} As an initial matter, we note that the Ohio Revised Code distinguishes between the sealing of a record and the expungement of a record. "Expungement often refers to the destruction, deletion, or erasure of records so they are no longer retrievable." *State v. T.C.N.*, 8th Dist. Cuyahoga No. 112428, 2023-Ohio-3156, ¶ 9, citing *Capital One Bank United States, N.A. v. Essex*, 2d Dist. Montgomery No. 25827, 2014-Ohio-4247, ¶ 11, referencing former R.C. 2953.37(A)(1) and 2953.38(A)(1). "Sealing, to the contrary, does not require the destruction of the records but limits access to the records to specific persons/entities." *Id.* Law enforcement and prosecuting attorneys are among those with access to sealed records. *Id.* This is particularly noteworthy in light of the trial court's comments at the hearing in this case. The trial court's concern that, should K.W. and F.S. be involved in some altercation in the future, the state had an important interest in maintaining this record, is misplaced. In the instant case, while K.W.'s application to seal was captioned as a "motion for expungement," and is referred to as such in her assignment of error, K.W. was only seeking to have her criminal record sealed, and not expunged. Therefore, the record would not be destroyed and would in fact be accessible to the state of Ohio in the future.

{¶ 17} R.C. 2953.32 permits courts to seal records following a conviction except as set forth under R.C. 2953.32(A)(1) and 2953.61. R.C. 2953.32 is a "remedial statute," and the purpose of sealing a record of conviction is to recognize that people may be rehabilitated. *State v. A.S.*, 2022-Ohio-3833, 199 N.E.3d 994, ¶ 7 (1st Dist.), citing *State v. R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-

210171, C-210172, and C-210173, 2022-Ohio-1108, ¶ 10, and *State v. Petrou*, 13 Ohio App.3d 456, 469 N.E.2d 974 (9th Dist.1984). "Moreover, this purpose is somewhat akin to the concept of sin, punishment, atonement, and forgiveness that is manifested in traditional western civilization." *State v. T.C.N.*, 8th Dist. Cuyahoga No. 112428, 2023-Ohio-3156, ¶ 11, citing *State v. M.H.*, 8th Dist. Cuyahoga No. 105589, 2018-Ohio-582, ¶ 10.

{¶ 18} Pursuant to R.C. 2953.32(C), upon the offender's filing of an application to seal their record, the trial court shall set a hearing and the court shall hold the hearing between 45 and 90 days after the filing of the application. *State v. W.A.R.*, 8th Dist. Cuyahoga No. 113057, 2024-Ohio-256, ¶ 18. R.C. 2953.32(D)(1) further outlines what the trial court shall do at the hearing as follows:

> (a) Determine whether the applicant is pursuing sealing or expunging a conviction of an offense that is prohibited under division (A) of this section or whether the forfeiture of bail was agreed to by the applicant and the prosecutor in the case, and determine whether the application was made at the time specified in division (B)(1)(a) or (b) or division (B)(2)(a) or (b) of this section that is applicable with respect to the application and the subject offense;
>
> (b) Determine whether criminal proceedings are pending against the applicant;
>
> (c) Determine whether the applicant has been rehabilitated to the satisfaction of the court;
>
> (d) If the prosecutor has filed an objection in accordance with division (C) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;
>
> (e) If the victim objected, pursuant to the Ohio Constitution, consider the reasons against granting the application specified by the victim in the objection;

(f) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed or expunged against the legitimate needs, if any, of the government to maintain those records;

(g) Consider the oral or written statement of any victim, victim's representative, and victim's attorney, if applicable;

(h) If the applicant was an eligible offender of the type described in division (A)(3) of section 2953.36 of the Revised Code as it existed prior to the effective date of this amendment, determine whether the offender has been rehabilitated to a satisfactory degree. In making the determination, the court may consider all of the following:

(i) The age of the offender;

(ii) The facts and circumstances of the offense;

(iii) The cessation or continuation of criminal behavior;

(iv) The education and employment of the offender;

(v) Any other circumstances that may relate to the offender's rehabilitation.

{¶ 19} An appellate court generally reviews the denial of an application to seal records for an abuse of discretion. *W.A.R.* at ¶ 16, citing *Bedford v. Bradberry*, 8th Dist. Cuyahoga No. 100285, 2014-Ohio-2058, ¶ 5. Thus, we will not reverse the trial court's judgment unless the court has exercised its discretionary judgment over the matter in an unwarranted way or committed legal error. *State v. A.S.*, 2022-Ohio-3833, 199 N.E.3d 994, ¶ 5 (1st Dist.), citing *Johnson v. Abdullah*, 166 Ohio St.3d 247, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶ 20} Here, there is no dispute that K.W. was eligible to have her criminal record sealed. Therefore, our analysis is primarily concerned with the trial court's weighing of the competing interests involved, whether K.W. satisfied her burden

described above, and whether K.W. adequately demonstrated that she was rehabilitated.

{¶ 21} It is the applicant's burden to demonstrate legitimate reasons, as opposed to a general privacy interest, why the records should not remain open to the public. *State v. A.L.H.*, 8th Dist. Cuyahoga No. 112469, 2023-Ohio-4789, ¶ 20, citing *State v. J.D.*, 2013-Ohio-4706, 1 N.E.3d 434, ¶ 8 (8th Dist.), citing *State v. Haney*, 70 Ohio App.3d 135, 590 N.E.2d 445 (10th Dist.1991). This burden is met by presenting evidence or testimony supporting the application, and the trial court must have evidence or testimony upon which to base its decision to seal the record. *Id.*, citing *State v. N.C.*, 9th Dist. Summit No. 29775, 2022-Ohio-781, ¶ 11, citing *State v. A.V.*, 9th Dist. Lorain No. 18CA011315, 2019-Ohio-1037, ¶ 9. "'Once this burden is met and those needs outweigh the legitimate interests of the state in maintaining the records, the application should be freely granted.'" *Id.*, quoting *N.C.* at ¶ 11, citing *State v. Garry*, 173 Ohio App.3d 168, 2007-Ohio-4878, 877 N.E.2d 755 (1st Dist.).

{¶ 22} With respect to whether K.W. presented legitimate reasons, beyond general privacy concerns, to seal her criminal record, the record is clear that K.W. sought to seal her criminal record so that she could renew her STNA license. Evidence was presented that K.W.'s conviction resulted in the loss of her STNA license, and since her conviction, K.W. has worked for a cleaning company in order to provide for her family; K.W. also takes care of her mother. Thus, K.W. clearly presented legitimate reasons to seal her criminal record.

{¶ 23} With respect to the state's interest in keeping the records open, the record does not contain any evidence, let alone any evidence that outweighs K.W.'s interests discussed above. The state's initial opposition to K.W.'s application was based on the mistaken belief that K.W. was still on probation for a separate offense. At the hearing on K.W.'s application, the assistant prosecuting attorney referred to a "two-pronged State opposition" to the application. The assistant prosecuting attorney explained that the first part of the opposition, related to probation that had been terminated, was no longer relevant. He went on to explain that in accordance with the April 2023 statutory amendments giving victims the right to be advised of expungement hearings and voice any opposition, the state notified F.S., F.S. had noted an opposition to the application, and F.S. wished to be heard by the court. While F.S. expressed a lengthy opposition to K.W.'s application, the state did not comment on, let alone explicitly endorse, this opposition.

{¶ 24} In its brief, the state notes that the trial court found the state's interest in maintaining the record of K.W.'s conviction was based on the ongoing and continued disagreements between K.W. and F.S. As discussed above, given that the state will continue to be able to access the record, it cannot be said that K.W.'s interest in sealing the record is outweighed by the state's interest in maintaining the record.

{¶ 25} With respect to rehabilitation, we note that "'[e]vidence of rehabilitation normally consists of an admission of guilt and a promise to never commit a similar offense in the future, or good character or citizenship in the

community since the conviction.'" *State v. A.L.H.*, 8th Dist. Cuyahoga No. 112469, 2023-Ohio-4789 at ¶ 24, quoting *State v. Evans*, 10th Dist. Franklin No. 13AP-158, 2013-Ohio-3891, ¶ 11, citing *State v. Brooks*, 2d Dist. Montgomery No. 25033, 2012-Ohio-3278, ¶ 21. Here, although K.W. did not explicitly promise to never commit a similar offense in the future, she pleaded guilty to misdemeanor assault, accepted responsibility, and showed remorse when she repeatedly apologized at her sentencing hearing and emphasized at the 2023 hearing that she wished to put this incident behind her.

{¶ 26} The state urges this court to affirm, citing our recent decision in *In re A.L.H.* *A.L.H.* is easily distinguishable from the instant case. The appellant in *A.L.H.* was a corrections officer who failed to log the injury of an inmate who was assaulted by several gang members while the appellant was on duty. The appellant was charged with and pled guilty to dereliction of duty, a second-degree misdemeanor; the court noted at his plea hearing that the "allegations against appellant could likely have yielded a tampering with evidence charge, which would have been a third-degree felony." *Id.* at ¶ 2. The appellant filed an application to seal the record of his conviction, and at the hearing on his application, "appellant's counsel and counsel for the state only presented arguments; no evidence was offered at the hearing" and the appellant did not testify on his own behalf. *Id.* at ¶ 10. This court affirmed the trial court's denial of appellant's application, finding that the appellant presented no evidence or testimony in the proceedings before the trial court to support his application. *Id.* at ¶ 25.

{¶ 27} Unlike *A.L.H.*, the offense in this case did not involve an abuse of power, or a betrayal of the trust placed in K.W. by her community. Instead, it involved an unfortunate assault that took place between family members, at a family gathering to celebrate the life of a family member who had been murdered. Without undermining the seriousness of K.W.'s offense or the harm she caused, we note that the facts of the two cases are not comparable. Moreover, unlike in *A.L.H.*, K.W. testified at the hearing in support of her application. Thus, unlike in *A.L.H.*, the entirety of the evidence in support of K.W.'s application was not merely arguments from counsel.

{¶ 28} When a court decides whether to grant an application to seal records, it must "weigh the interests of the person in having the official records pertaining to the case sealed against the legitimate needs, if any, of the government to maintain those records." R.C. 2953.32(D)(2). In weighing these interests, the court must liberally construe the statute, and "'the relief available is to be liberally granted, and it is an abuse of discretion not to do so.'" *State v. G. F. A.*, 2019-Ohio-4978, 149 N.E.3d 1071, ¶ 16 (8th Dist.), quoting *State v. Hilbert*, 145 Ohio App.3d 824, 828, 764 N.E.2d 1064 (8th Dist. 2001). While the April 2023 amendments to the statute provide for victims such as F.S. to voice their opposition to an application to seal a record of conviction, and require that the court consider the victim's position, neither the statute nor any case law provides any guidance as to the weight a court must give the victim's position. While F.S. voiced clear opposition to K.W.'s application to seal her record of conviction, this opposition is but one factor the court

was required to consider. Moreover, F.S.'s lengthy and zealous statements to the court contained at least one critical inaccuracy: F.S. emphasized that K.W. never apologized or showed any remorse for what she had done. As discussed above, K.W. did in fact apologize to everyone involved with the incident, and she also expressed regret and remorse for what she did.

{¶ 29} Based on our thorough review of the record, the trial court committed legal error when it confused the consequences of sealing K.W.'s record with expungement.

{¶ 30} Based on the foregoing, the trial court abused its discretion in denying K.W.'s application to seal. Therefore, K.W.'s sole assignment of error is sustained.

{¶ 31} Judgment reversed and case remanded to the trial court to seal the record of conviction.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN A. GALLAGHER, J., CONCUR